UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs<br><br>CHRISTOPHER KEELING,<br><br>Defendants. | Case No. 4:15-cr-00160-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Christopher Keeling's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 270. The Government has filed an opposition to Keeling's Motion. Dkt. 272. Keeling filed a reply and the matter is ripe for the Court's consideration. Dkt. 275.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On February 7, 2017, the Court sentenced Christopher Keeling to 168 months incarceration for conspiracy to distribute 50 grams or more of actual methamphetamines,

and 120 months incarceration for the unlawful possession of a firearm, with both sentences to run concurrently. Dkts. 191, 192. In October of 2019, the Court then reduced Keeling's sentence for the conspiracy to distribute methamphetamine from 168 months to 140 months. Dkt. 268. Currently, Keeling is incarcerated at Federal Correctional Institute (FCI) Englewood in Littleton, Colorado.

Keeling filed a Motion for Compassionate Release with this Court on June 18, 2020. Dkt. 270. He cited to the Covid-19 pandemic as the reason justifying release. The Government has opposed Keeling's Motion, and Keeling has filed a reply.[1] Dkts. 272, 275.

## III. LEGAL STANDARD

Keeling seeks compassionate release under the First Step Act's ("FSA") newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[2] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with

---

[1] The Court will note that Keeling's reply was filed two months late. Nevertheless, the Court reviewed and considered the reply when making this decision.

[2] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

MEMORANDUM DECISION AND ORDER - 2

applicable policy statements" issued by the U.S. Sentencing Commission.[3] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Keeling has not provided sufficient proof to establish that he has exhausted his administrative remedies. Keeling alluded to having submitted a request for relief to the warden at some point prior to filing this Motion with the Court. Dkt. 270, at 17. However, Keeling has not attached any proof of this request, and the Bureau of Prisons claims to have no record of any such request. Dkt. 272, at 7. As such, Keeling has failed to establish that

---

[3] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

he has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Even if Keeling had exhausted his administrative remedies, he would not be entitled to relief because he has not presented "extraordinary and compelling reasons" warranting a permanent reduction in his sentence and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Keeling bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 3:13-cr-0044-BR, 2020 WL 1673440, at 3 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). Because this is no longer the law with the FSA, which allows defendants to seek relief directly from the court, this "leaves district courts in a conundrum." *Id.* (explaining that

Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, although the Sentencing Commission "has not made the policy statements for the old regime applicable to the new one").

A growing number of district courts have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant compassionate release." *Rodriguez*, 411 F. Supp. 3d at 682 (collecting cases). However, other courts have concluded "a judge may not stray beyond the specific instances listed in [U.S.S.G. § 1B1.13]." *Mondaca*, 2020 WL 1029024, at *3 (citations omitted); *see also United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (stating U.S.S.G. § 1B1.13's descriptions of extraordinary and compelling reasons "remain current, even if references to the identity of the moving party are not").

Concern for the possibility of exposure to Covid-19 on its own does not meet extraordinary and compelling criteria. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Here, Keeling points to the Covid-19 pandemic in general as reason for his release. Unlike in other cases where inmates have been released, Keeling does not point to any underlying health conditions which may put him at an increased risk of contracting a severe case of Covid-19. As such, Keeling has not met his burden of demonstrating extraordinary and compelling reasons for his release.

Additionally, there is no evidence to suggest that Keeling would be at less risk to contract the virus if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would

likely be less-exposed to the pandemic by remaining at the prison. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"); *United States v. Shabudia*, 2020 WL 2464751, at *2 (N.D. Cal. May 12, 2020) (denying motion for elderly inmate with high cholesterol; observing that "while the Court acknowledges [defendant's] worries about the spread of COVID-19 in prisons, the facility in which [defendant] is housed currently has no confirmed cases of COVID-19"); *see also United States v. Wright*, 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (denying motion for inmate with diabetes, noting, it appears "the BOP has been successful at limiting the spread of the virus within the MCC . . . despite the close proximity of inmates, the BOP is able to impose restrictions on visitors and restrictions on internal movements that are more difficult to impose outside prison walls. There is no reason to believe at this juncture that [defendant] would be at any less of a risk from contracting COVID-19 if he were to be released."); *United States v. Gamble*, 2020 WL 1955338, at *5 (D. Conn. Apr. 23, 2020) (denying defendant with diabetes compassionate release where the BOP had contained the

spread of the virus in the defendant's specific facility); *United States v. Seng*, 2020 WL 2301202, at *6–7 (S.D.N.Y. May 8, 2020) (stating "statistics support the inference that [defendant] would be more at risk of contracting COVID-19 were he released and required to stay in his apartment in Manhattan than he would be by remaining in FCI Allenwood Low," which had no reported cases); *United States v. Guyton*, 2020 WL 2128579 (E.D. La. May 5, 2020) (denying compassionate release to 45-year-old inmate with hypertension where there were no cases of COVID-19 at inmate's facility); *United States v. Shah*, 2020 WL 1934930 (E.D. Mich. Apr. 22, 2020) (denying compassionate release although defendant had diabetes and hypertension because there were no cases at defendant's facility and because the BOP was making efforts to protect inmates).

Currently, FCI Englewood—where Keeling is incarcerated—has only had seven cases of Covid-19 among inmates.[4] Conversely, Spokane County, where Keeling would reside if released, has had over 7,000 cases of Covid-19, as well as 171 deaths.[5] Considering the high level of cases in Spokane County, the Court cannot find that Keeling would be at less risk if released into the community.

Finally, the Government asserts there are compelling reasons *not* to release Keeling at this time. Specifically, the Government highlights Keeling's conviction in this case for conspiracy to distribute methamphetamine and the unlawful possession of a firearm, as

---

[4] *Coronavirus*, FEDERAL BUREAU OF PRISONS (last updated Oct. 5, 2020), https://www.bop.gov/coronavirus/.

[5] *Spokane County Covid-19 Data*, Spokane Regional Health District (last updated Oct. 2, 2005), https://srhd.org/covid19cases.

MEMORANDUM DECISION AND ORDER - 7

well as Keeling's prior convictions—including charges for stalking, possession of controlled substances, and distribution of controlled substances—and notes these behaviors pose a substantial risk to the community. Dkt. 272, at 9-10. The Court agrees these are compelling reasons for denying Keeling's motion.

In sum, the Court finds that Keeling has not exhausted his administrative remedies, nor has he met his burden to show that "extraordinary and compelling reasons" exist warranting his release. Accordingly, the Court must DENY Keeling's Motion. 18 U.S.C. § 3582(C)(1)(A).[6]

## V. ORDER

The Court HEREBY ORDERS:

1. Keeling's Motion for Compassionate Release (Dkt. 270) is DENIED.

DATED: October 26, 2020

David C. Nye
Chief U.S. District Court Judge

---

[6] In light of this holding, the Court does not consider the 18 U.S.C. § 3553(a) sentencing factors. 18 U.S.C. § 3582(c)(1)(A).